UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| John Doe, | Civ. No. 17-2413 (PAM/LIB) |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| St. John's University, | |
| Defendant. | |

This matter is before the Court on Defendant's Motion to Dismiss. For the following reasons, the Motion is granted.

**BACKGROUND**

On October 28, 2016, a female student at the College of St. Benedict reported to a campus security officer that Plaintiff John Doe, a student at Defendant St. John's University, had sexually assaulted her late the previous evening. (Compl. (Docket No. 1) ¶ 58.) The Dean of Students of St. John's informed Plaintiff of the charges that day, and met with Plaintiff to discuss the allegations and the investigation process. (Id. ¶ 59.) Because the incident involved an alleged sexual assault, St. John's policy required the University to engage in a formal resolution process, including the appointment of an outside investigator. (Compl. Ex. 2 (College of St. Benedict and St. John's University Sexual Misconduct Complaint Procedures) (Docket No. 1-2) at 16 ("Procedures").)[1] The University chose an attorney who specializes in higher education law to conduct the

---

[1] The Procedures also provide that, at the University's discretion, St. John's "Life Safety" or St. Benedict's Campus Security could be appointed to investigate a complaint of sexual assault. (Procedures at 16.)

investigation. Plaintiff objected to the appointment, contending that because the attorney's law firm had represented the University on a previous Title IX matter, she would be biased in favor of the University. (Compl. ¶ 62.) St. John's denied Plaintiff's request to remove the attorney, and she proceeded to investigate the complaint. (Id. ¶ 63.)

The University's sexual misconduct procedures require that the investigator interview the complainant, the respondent, and any other witnesses the investigator deems relevant. (Procedures at 17.) Both parties have the opportunity to suggest witnesses for the investigator to interview, and both parties are allowed to submit "any and all information and evidence believed to be relevant to the complaint." (Id.) The procedures provide that the investigation report should issue within 25 days of the complaint's filing. (Id. at 18.)

Two weeks after the complaint was filed and in the midst of the investigation, Plaintiff filed his own complaint. He alleged that the complainant, known as Jane Doe, engaged in nonconsensual sexual contact with him on the same evening as she alleged that he assaulted her. (Compl. ¶¶ 69-70.) The investigator also investigated this allegation, although again, Plaintiff objected to her participation in the proceedings.

The investigation report is not included in the documents attached to the Complaint. But the investigator provided the report, as well as the entire investigation file, to a three-person adjudication panel appointed by the University. (Procedures at 4, 20.) The Procedures give each party the opportunity to review the complete investigation file and the report, to make a written response to it, and to submit a rebuttal to the other

party's response.  (Id. at 19.)  The Procedures, however, do not require an adversarial hearing, and the adjudication panel did not hold one.

The panel reviewed the file and, pursuant to the standard of review set forth in the Procedures, determined that it was "more likely than not" that Plaintiff violated the University's sexual misconduct policy.  (Id. at 21.)  In February 2017, the Dean of Students determined that the appropriate sanction was Plaintiff's suspension from St. John's until Jane Doe's anticipated graduation date of May 2019.  (Compl. ¶ 75.)

Plaintiff appealed.  The Procedures provide for an appeal only for new or newly discovered evidence or a procedural error.  (Procedures at 24.)  The adjudication panel denied Plaintiff's appeal because he had no new evidence and did not allege a procedural error.  Plaintiff was suspended from St. John's, and transferred to a different institution.

Plaintiff contends that the Procedures violate Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq., because they do not provide sufficient due process to accused students, and he seeks a declaratory judgment to that effect.  He alleges a claim for "erroneous outcome from a flawed proceeding" under Title IX, seeking damages for mental and emotional distress, past and future economic harm, and other similar damages.  (Compl. ¶ 107.)  He also raises a claim for deliberate indifference under Title IX, breach of contract, breach of the covenant of good faith and fair dealing, and negligence.  The University asks the Court to dismiss all of Plaintiff's claims.

**DISCUSSION**

When evaluating a motion to dismiss under Rule 12(b)(6), the Court assumes the facts in the Complaint to be true and construes all reasonable inferences from those facts

3

in the light most favorable to the non-moving party. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). The Court need not accept as true wholly conclusory allegations, Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions that the plaintiff draws from the facts pled. Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." Id. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under Twombly. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." Twombly, 550 U.S. at 556.

**A.     Title IX**

Title IX prohibits educational institutions that receive federal funds from discriminating against their students on the basis of sex. 20 U.S.C. § 1681(a). Department of Education regulations require that schools promulgate grievance procedures "providing for the prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited" by Title IX, including sexual misconduct. 34 C.F.R. § 106.8(b). "Title IX bars the imposition of university discipline where gender is a motivating factor in the decision to discipline." Yusuf v. Vassar

4

College, 35 F.3d 709, 715 (2d Cir. 1994).

In addition to the Title IX and regulatory framework, many of Plaintiff's claims depend on a so-called "Dear Colleague" letter that the Department of Education's Office of Civil Rights issued in 2011. (Compl. ¶ 24.) This letter sets forth guidance for institutions on processing claims of sexual misconduct. The guidelines provide, among other things, that the complainant and the accused be afforded access to information in the investigation, that there should be an appeals process, and that the decisionmakers should be trained in resolving complaints of sexual misconduct. (Id.) Plaintiff contends that this letter, as well as many publicized incidents of campus sexual misconduct nationwide, pressured colleges "to convict all accused male students." (Id. ¶ 98.)

1. **Declaratory Judgment**

The only basis for Plaintiff's declaratory judgment claim is that St. John's allegedly violated Title IX's regulations regarding grievance procedures. But a university's failure to promulgate a grievance procedure that complies with Title IX "does not itself constitute 'discrimination' under Title IX." Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 292 (1998). Rather, "the Department of Education [has the power to] enforce [a regulatory] requirement administratively." Id. Thus, there "is no private right of action to enforce grievance procedures and other regulations under Title IX." Doe v. Univ. of St. Thomas, 240 F. Supp. 3d 984, 989 (D. Minn. 2017) (Tunheim, C.J.) (citations omitted). Plaintiff's declaratory-judgment claim is therefore dismissed.

2. **Erroneous Outcome**

To allege a claim that a disciplinary proceeding reached an erroneous outcome on

the basis of sex discrimination, a plaintiff must plausibly plead both facts that cast doubt on the outcome of the proceeding and "a causal connection between the flawed outcome and gender bias." Yusuf, 35 F.3d at 715. A mere allegation that a procedurally flawed proceeding led to an erroneous outcome "combined with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss." Id. Rather, a plaintiff must specifically allege a causal connection between the outcome and discrimination. See id. ("A plaintiff must thus also allege particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding."). Allegations that might suffice to show a motivating factor are things such as comments by members of the disciplinary board or other university officials evidencing gender bias, or a "pattern[] of decision-making that . . . tend[s] to show the influence of gender." Id.

In addition to alleging almost nothing regarding the merits of the assault complaint itself, other than his belief that his accuser was lying, Plaintiff sets forth no facts that tie the allegedly flawed outcome of his proceeding with any gender bias. He disagrees with the University's decision not to remove the investigator, but he offers no evidence that would allow the Court to conclude that this decision was a result of gender bias. There are no allegations, for example, that there had been criticism of the University in media reports for its handling of sexual assault complaints, Doe v. Columbia Univ., 831 F.3d 46, 57 (2d Cir. 2016), or that the University proceeded with the case despite a prosecutor's doubts about the veracity of the complaint, among other serious procedural irregularities, Wells v. Xavier Univ., 7 F. Supp. 3d 746, 748 (S.D. Ohio 2014). Indeed, Plaintiff only alleges that he believed the investigator was biased because she worked for

the law firm that represented the University in another Title IX proceeding. This is plainly insufficient to raise a genuine issue as to gender discrimination. Nor can the University's compliance with its own procedures, which did not require an adversarial hearing or allow Plaintiff to conduct his own independent investigation, establish any gender bias whatsoever.

Plaintiff claims that Jane Doe gave conflicting statements and was therefore not credible, but this allegation does not establish either that the outcome of the proceeding was flawed or that the proceeding was infected by gender discrimination. Indeed, Plaintiff does not explain what these alleged "conflicting statements" were—he says only that there was no evidence that Jane Doe "objected to the sexual contact" and that he contended in his own complaint that she touched his penis repeatedly (and without his permission) before the alleged sexual assault. (Compl. ¶ 92.) These are not conflicting statements, but is merely evidence that detracts from his accuser's allegations. The decisionmakers were entitled to weigh this evidence in making their determination. Plaintiff has not pled any facts that demonstrate that either the decisionmakers or the outcome of the proceeding was erroneous.

Plaintiff believes that the allegedly erroneous outcome of his proceeding "can only be explained by gender bias against males in cases involving allegations of sexual assault." (Id. ¶ 94.) But he pleads no facts to support this conclusion. Merely because all or nearly all of the claims of sexual misconduct at St. John's involve a female accuser and male accused does not mean that the University is discriminating against men in its procedures for handling claims of sexual misconduct, nor does the alleged "significant

7

gender-based statistical disparity demonstrate[] the existence of discrimination." (Id. ¶ 95.) "It is a simple fact that the majority of accusers of sexual assault are female and the majority of the accused are male, therefore enforcement is likely to have a disparate impact on the sexes." Austin v. Univ. of Or., 205 F. Supp. 3d 1214, 1225 (D. Or. 2016); Nat'l Sexual Violence Res. Ctr., Statistics About Sexual Violence, https://www.nsvrc.org/sites/default/files/publications_nsvrc_factsheet_media-packet_statistics-about-sexual-violence_0.pdf (noting that fewer than one out of every ten sexual assault victims is male) (last visited October 16, 2017); see Doe v. Regents of the Univ. of Cal., No. 2:15-2478, 2016 WL 5515711, at *5 (C.D. Cal. July 25, 2016) (stating that a court cannot infer "that a higher rate of sexual assaults committed by men against women, or filed by women against men, indicates discriminatory treatment of males accused of sexual assault in the consequent proceedings"); see also Doe v. Univ. of Colo., Boulder, --- F. Supp. 3d ---, 2017 WL 2311209, at *8 (D. Colo. May 26, 2017) (noting that most courts to consider the issue have found that "pro-victim bias . . . does not equate to anti-male bias").

Even if he had alleged enough facts to cast doubt on the determination that he was responsible for sexual misconduct, Plaintiff's allegations are insufficient to plausibly allege the required causal connection between the allegedly erroneous outcome and intentional discrimination on the basis of sex. His erroneous-outcome claim is therefore dismissed.

### 3. Deliberate Indifference

To sufficiently allege a deliberate-indifference claim under Title IX, Plaintiff must allege that a University official "who had authority to institute corrective measures had actual notice of, and was deliberately indifferent to, the misconduct" of which Plaintiff complains. Mallory v. Ohio Univ., 76 F. App'x 634, 638 (6th Cir. 2003) (citation omitted). Plaintiff must also show that the University's response to the misconduct was "clearly unreasonable in light of the known circumstances." Patterson v. Hudson Area Schs., 551 F.3d 438, 446 (6th Cir. 2009).

Plaintiff argues only that the University was deliberately indifferent because it found him responsible for the sexual assault despite what he contends was insufficient evidence. But as discussed, Plaintiff has not made out a claim of any gender bias in the proceedings. And even if he had, Plaintiff must do more than allege that because there was gender bias, the University was deliberately indifferent. He must point to a particular decisionmaker who knew that the proceedings were biased against males accused of sexual misconduct, and he must show that that decisionmaker's failure to take corrective action was unreasonable. He has not attempted to meet this burden, and this claim is likewise dismissed.

### B. Breach of Contract

Plaintiff contends that the University's written sexual misconduct policies and procedures, which are contained in the St. John's Undergraduate Student Policy Book, constituted a contract between him and the University. (Compl. ¶ 114.) He argues that the University violated this contract by refusing to allow him to conduct his own

9

investigation and by failing to give him an unredacted copy of the investigative report. The University's sexual misconduct policies and procedures do not constitute a contract between the University and its students, however. See Rollins v. Cardinal Stritch Univ., 626 N.W.2d 464, 470 (Minn. Ct. App. 2001) ("Minnesota courts are generally reluctant to find contractual obligations between students and their schools based upon student handbooks."). Thus, Plaintiff's breach-of-contract claim fails at the first step, because there was no contract.

Moreover, the University's policies and procedures do not require that the University allow an accused student to conduct their own investigation, nor do they specify that the accused will be provided with an unredacted copy of the investigative report. Even if the policies and procedures could be construed as a contract, Plaintiff has failed to allege any breach of that contract.

Plaintiff also contends that promises made to him in emails were contractual in nature. But Plaintiff's Complaint did not include any of these alleged promises to support his breach-of-contract claim, and he cannot amend the Complaint in briefing opposing a motion to dismiss. Morgan Distrib. Co. v. Unidynamic Corp., 868 F.2d 992, 995 (8th Cir. 1989). Moreover, even his briefing fails to point to any specific promise that the University allegedly breached, referring the Court to the "supporting documents, which were attached to Plaintiff's Complaint" as promises clear and definite enough to allow his breach-of-contract claim to proceed. (Pl.'s Opp'n Mem. (Docket No. 21) at 17.) Two of the seven exhibits to the Complaint are the St. John's sexual misconduct policy and the Procedures (Compl. Exs. 1, 2); as discussed, these cannot support a

breach-of-contract claim. A third exhibit is the no-contact order issued immediately after the claimed sexual assault. (Id. Ex. 3.) This order contains no promises to Plaintiff. Another exhibit is an e-mail from Plaintiff's attorney to St. John's, objecting to the investigator's appointment. (Id. Ex. 5.) This email cannot constitute any sort of promise on the part of the University. The three remaining exhibits are e-mails to Plaintiff from the University. One is a general email from the Dean of Students, informing Plaintiff of the investigator's appointment and giving him information regarding how to object to her appointment. (Id. Ex. 4.) Another is an email from the Dean of Students to Plaintiff's attorney about Plaintiff's objections to the investigator's appointment to investigate both the initial complaint and Plaintiff's own claim of nonconsensual sexual contact against Jane Doe. (Id. Ex. 6.) The final email is from the investigator to Plaintiff, informing him of the close of evidence date for her investigation and reminding Plaintiff to provide her with all information and documents by that date. (Id. Ex. 7.) None of these emails contains any promises, and none supports a breach-of-contract claim. This claim must be dismissed.

Without a viable breach-of-contract claim, or any plausible allegation of a contractual relationship, Plaintiff's covenant of good faith and fair dealing claim likewise fails. Univ. of St. Thomas, 240 F. Supp. 3d at 994.

**C.   Negligence**

Plaintiff contends that, by providing procedures for determining a student's responsibility for sexual assault, St. John's had the obligation to implement that process to ensure that students are not wrongly held responsible. Plaintiff notes that another

11

Judge in this District has allowed a similar negligence claim to proceed. See id. at 995. In that case, however, the plaintiff alleged that that university "made a plethora of errors during the disciplinary process that amounted to a breach of [its] alleged duty of care." Id. (citing 15 paragraphs of the complaint). Plaintiff here makes few specific allegations of any negligence in the procedures St. John's employed, aside from contending that the University's decision to combine his own sexual assault allegations with those of Jane Doe was improper, and that he does not believe the University appropriately investigated his complaint. (See Compl. ¶ 73.) Plaintiff also contends that the failure to hold a hearing at which he could testify and confront the accuser, and the prohibition on conducting his own investigation, constituted negligence. (Id. ¶ 93).

But Plaintiff does not explain what duty underlies these very thin allegations. It may be that the University's procedures were negligent, but without a duty underlying the University's actions, there can be no claim for negligence. In addition, unlike in the case against St. Thomas, Plaintiff here has alleged no specific facts to support his negligence claim, asking the Court to allow him to proceed to discovery in the hopes of uncovering those facts. But a lawsuit is not a "fishing expedition," and Twombly and Iqbal require more than a mere conclusory allegation of negligence. E.E.O.C. v. CRST Van Expedited, Inc., 679 F.3d 657, 675 (8th Cir. 2012). Plaintiff's negligence claim fails.[2]

---

[2] Plaintiff concedes that, despite the Complaint's allegation of diversity jurisdiction (Compl. ¶ 5), there is no diversity jurisdiction here. Thus, even if Plaintiff had succeeded in plausibly alleging negligence, the Court would decline to exercise supplemental jurisdiction over the negligence claim and would dismiss it without prejudice. See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").

**CONCLUSION**

Plaintiff has failed to plausibly plead any facts to support his claims. Accordingly, **IT IS HEREBY ORDERED that** the Motion to Dismiss (Docket No. 11) is **GRANTED** and the Complaint (Docket No. 1) is **DISMISSED with prejudice**. **LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 26, 2017

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge